EL PUEBLO DE PUERTO RICO, apelado, *v.* ÁNGEL LUIS CARRIÓN RIVERA, acusado-apelante.

*Número:* CR-80-40        *Resuelto:* 30 de diciembre de 1981

*Carmen Ana Rodríguez Maldonado*, de la División de Apelaciones de la Sociedad para Asistencia Legal, abogado del apelante; *Héctor A. Colón Cruz, Procurador General*, y *Josefa A. Román García, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Se acusó al apelante de asesinar al dueño de un negocio que se alega asaltó junto con dos menores. El único testigo presencial de los hechos fue uno de los menores, a quien se le concedió inmunidad. La defensa del apelante fue al efecto de que el perpetrador del asalto y del asesinato lo fue el menor que lo incriminó. Adujo que el motivo que tuvo el menor para involucrarlo fue el de rencillas personales que tuvieron su origen en la mala voluntad que le tiene el menor al acusado, pues en una ocasión aquél se dirigió impropiamente a su esposa y éste tuvo que llamarle la atención e incluso le infligió castigo corporal. Por esta razón el agredido manifestó que se desquitaría. Para establecer como defensa esos hechos, el apelante presentó al testigo Reinaldo Martínez Sánchez, quien había presenciado el incidente antes relatado. A eso se limitó la declaración de Martínez Sánchez en el interrogatorio. En el contrainterrogatorio el fiscal le preguntó sobre el carácter del acusado. El testigo respondió que efectivamente conocía su buen carácter. Entonces el fiscal le preguntó que si conocía el hecho de que el apelante había sido acusado anteriormente por un delito similar y el acusado objetó. El tribunal sostuvo la objeción y ordenó la disolución del jurado. Suspendió los efectos de su dictamen para permitir que el Procurador General pudiera recurrir ante nosotros. En su recurso de *certiorari* (O-80-264), el Procurador apuntó que "el juez de instancia [erró] al resolver que no existía motivo alguno para traer a conocimiento del jurado la existencia de otros delitos alegadamente cometidos por el acusado".

Al resolver el recurso expresamos que "[e]n juicio

ante jurado por Asesinato en Primer Grado, Tentativa de Robo e Infracción a los Artículos 6 y 8 de la Ley de Armas, un testigo de defensa, quien no era un testigo de reputación declaró en el contrainterrogatorio que hacía dos años que conocía al acusado, que sabía que era una persona honrada, que le gusta trabajar, que siempre que se da tragos se los da socialmente, que es tranquilo y que él no pudo haber sido el que cometió el asesinato. El fiscal le pregunta entonces al testigo si no se había enterado de que el acusado había sido denunciado anteriormente por delito de robo, conspiración e infracción a la Ley de Armas. La defensa objetó; el testigo se limitó a contestar que no tenía conocimiento de eso. . . . Si el tribunal cree que era improcedente el contrainterrogatorio del fiscal, sobre lo cual no estamos pasando juicio ahora, puede dar instrucciones al jurado para corregir el error. A su vez, si la defensa considera que el error no es subsanable mediante instrucciones al jurado, podría incluirlo en el señalamiento de errores en el correspondiente recurso de apelación, en caso de resultar convicto el acusado".

Devuelto el caso al tribunal de instancia se continuó la celebración del juicio. El juez, visto los términos de nuestra sentencia, admitió en evidencia las acusaciones y sentencias dictadas contra el acusado instruyendo al .jurado que la admitía para "impugnar al testigo de defensa Reinaldo Sánchez y no con ningún otro propósito".

Las acusaciones y sentencias admitidas no podían usarse para impugnar al testigo pues éste una y otra vez reiteró que para la fecha de las acusaciones no conocía al acusado y el fiscal no presentó prueba para demostrar que sí lo conocía. El único propósito de esa evidencia era llevar a conocimiento del jurado que el acusado había cometido antes un delito similar y las instrucciones que transmitió el juez en nada impedían que el jurado las considerara. Ya en *Reyes* v. *Tribunal Superior*, 84 D.P.R. 29, 34 (1961), hicimos referencia a un estudio llevado a cabo por el Cole-

gio de Derecho de la Universidad de Chicago que llegó a la conclusión de "que las instrucciones sólo sirven para que el jurado tenga más en cuenta la prueba que se le indica no debe considerar. Nota 24 U. Chi. L. Rev. 710 (1957)".

■ No puede sostenerse la convicción a base de que el acusado no objetó el contrainterrogatorio del fiscal. Ciertamente no se requería que la defensa objetara la primera parte del contrainterrogatorio ya que el mismo era beneficioso para el acusado. Por otro lado si se oponía el jurado podía razonablemente deducir que la contestación del testigo le perjudicaría. Y en cuanto a la segunda parte, aquella referente a si el testigo tenía conocimiento de acusaciones anteriores, ya hemos visto que la objetó. Pero es que, además, la Regla 6 de las de Evidencia establece que "[n]ada de lo dispuesto en las Reglas 5 y 6 impedirá que un tribunal apelativo considere errores crasos y perjudiciales de admisión o exclusión de evidencia, a pesar de no haber mediado oportuna objeción, cuando el no corregir dichos errores resulte en un fracaso de la justicia". *Pueblo* v. *Oquendo*, 83 D.P.R. 234 (1961). ¿Puede haber fracaso más grande de la justicia que se condene a una persona por hechos distintos de aquellos por los que se le está juzgando? En *Pueblo* v. *Arteaga Torres*, 93 D.P.R. 148 (1966), ratificamos la norma de que no procede pasar al jurado la alegación de reincidencia si el acusado acepta la comisión de los delitos anteriores. A ese efecto expresamos a la pág. 152:

Desde *Pueblo* v. *Beltrán*, 73 D.P.R. 509, 517 (1952), hemos estado sosteniendo que no es propio en ley el que pasen al jurado las alegaciones de la comisión de otros delitos contenidas en la acusación para demostrar reincidencia, cuando, por haberse aceptado el hecho, no hay controversia alguna ante el jurado sobre el particular. Véanse: *Pueblo* v. *González*, 80 D.P.R. 208, 210 (1958); *Pueblo* v. *Colón*, 81 D.P.R. 331, 334 (1959); *Pueblo* v. *Aponte González*, 83 D.P.R. 511, 517 (1961). Ya habíamos dicho en *Pueblo* v. *Cancio*, 53 D.P.R. 547, 549 (1938), que el calificativo de subsiguiente

antepuesto a la denominación de un delito no varía ni altera en manera alguna los elementos constitutivos del mismo. No se trata de un delito distinto en sus elementos, sino cometido después de ser convicto de otro, circunstancia que sólo se alega y se toma en consideración a los efectos de la imposición de la pena. *Pueblo* v. *Conroig*, 60 D.P.R. 168 (1942); *Pueblo* v. *Almodóvar*, 61 D.P.R. 685 (1943).

La norma de evitar que pase al jurado una acusación con la alegación de haberse cometido otros delitos cuando ésta se ha aceptado tiene su profunda razón de ser, más que en la mera inobservancia de un precepto estatutario, Art. 285 del Código de Enjuiciamiento Criminal según se ha interpretado, en el hecho básico de que no debe juzgarse a una persona sino por el delito específico que se le imputa y, excepto en los casos permisibles por vía de excepción para determinados fines y propósitos, permitir que el jurado se informe de la comisión de otros delitos que no están siendo juzgados puede producir un veredicto que no sea el producto enteramente de un juicio justo e imparcial.

No hay duda de que el propósito del fiscal al presentar prueba de carácter del acusado era demostrar que ante los hechos imputados en el presente caso, el acusado se comportó de conformidad con tal carácter, *i.e.*, que si al acusado se le imputó un delito similar en una ocasión anterior lo más probable es que el que se le impute ahora sea cierto.

La Regla 20 de Evidencia expone la norma general de que la evidencia del carácter de una persona no es admisible cuando se ofrece para probar que en una ocasión específica la persona actuó de conformidad con tal carácter. Entre las excepciones que la propia regla señala se encuentran dos que, a nuestro juicio, gobiernan la presente situación.(¹) La primera es la que reconoce el derecho absoluto del acusado de presentar evidencia de su carácter para probar que ante los hechos del caso por los

---

(¹) Se trata de los incisos (A)(1) y (A)(2), los cuales resumen la llamada doctrina de "abrir la puerta". E. Chiesa, *Evidencia de carácter y de conducta específica bajo las Reglas de Evidencia de 1979*, XV Rev. Jur. U.I.A. 45, 51 (1980).

que se le juzga, él actuó de conformidad con tal carácter. La segunda excepción permite al fiscal presentar prueba del mal carácter del acusado únicamente si el acusado ha presentado previamente prueba de su buen carácter. Al fiscal le está vedado presentar la prueba del mal carácter del acusado hasta tanto éste haya presentado su prueba de buen carácter. Ver *Michelson* v. *United States*, 335 U.S. 469 (1948).

De modo que el fiscal puede presentar prueba para refutar el buen carácter del acusado únicamente cuando el acusado haya presentado un testigo de reputación para que declare sobre su buen carácter. No obstante, como afirma Weinstein, un testigo de defensa que conoce el carácter del acusado pero que no ha sido presentado como testigo de reputación no se puede convertir en testigo de reputación al antojo del fiscal hasta tanto el acusado no haya abierto el asunto a discusión mediante la presentación de prueba de su buen carácter. Weinstein, *Evidence*, Sec. 404[05]. Permitirle al fiscal que pregunte a un testigo de defensa acerca del carácter del acusado sin que éste haya presentado prueba de esa naturaleza, vulneraría el derecho constitucional del acusado a un juicio justo e imparcial. Art. II, Sec. 11, de nuestra Constitución. El acusado tiene derecho tanto de presentar como de no presentar prueba. Si presenta prueba, ese derecho cobija la facultad de decidir cuál prueba presenta y cuál no. Si decide no presentar prueba de su carácter, el fiscal debe respetar el ejercicio de esa opción y abstenerse de introducir prueba claramente inadmisible, pues si algo resulta evidente de nuestras decisiones en *Pueblo* v. *Padilla Arroyo*, 104 D.P.R. 103 (1975), *Pueblo* v. *Hernández Pérez*, 93 D.P.R. 182 (1966), y *Pueblo* v. *Archeval*, 74 D.P.R. 512 (1953), es que si el acusado no "abre la puerta" el fiscal no puede forzarla. El acusado que se abstiene de presentar prueba de su carácter debe estar libre de la preocupación que supone la posibilidad de que el fiscal aduzca prueba

de carácter en el contrainterrogatorio, ya que todo acusado tiene derecho a que se le juzgue únicamente por los hechos que dan margen a la acusación y no por otros.

Como en el presente caso el acusado no presentó prueba de su carácter era inadmisible la prueba objetada por el acusado. *Procede la revocación de la sentencia y la celebración de un nuevo juicio.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente en la cual concurren los Jueces Asociados Señores Torres Rigual y Negrón García.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz en la cual concurren los Jueces Asociados Señores Torres Rigual y Negrón García.

Un jurado trajo veredictos de culpabilidad contra el apelante en delitos de asesinato en primer grado, tentativa de robo e infracción del Art. 8 Ley de Armas, originados en el asalto a un negocio durante el cual el acusado dio muerte al dueño. La Sociedad para Asistencia Legal en su alegato de apelación hace un solo señalamiento de error genérico, consistente en que el juicio no fue objetivo ni imparcial y que se desvió del debido proceso. El veredicto de jurado descansa en evidencia directa, el testimonio de un coautor del asalto que declaró hallarse junto al acusado cuando éste disparó contra don Fernando, el dueño del negocio. La defensa del acusado se centró en los testimonios de un cuñado (hermano de la esposa de aquél), y un vecino suyo en el Caserío Ramos Antonini tendentes a desacreditar por falso y prejuiciado el testimonio del testigo de cargo de quien dijeron que había sido abofeteado por el acusado y que había jurado desquitarse. No se ofreció coartada.

El argumento de la Sociedad para Asistencia Legal se concreta en lo que llama indebida admisión en evidencia de prueba de carácter del acusado que llegó al jurado

mediante contestaciones del testigo Reinaldo Martínez Sánchez al contrainterrogatorio del fiscal y la introducción de acusación y sentencia dictadas contra el mismo acusado en casos previos por robo, Arts. 8 y 6 Ley de Armas y conspiración. Según la Regla 20 de Evidencia esta prueba de carácter es admisible por excepción si la ofrece el acusado para probar su conducta; puede presentarse mediante testimonio de reputación o en la forma de opinión, y el fiscal podrá inquirir en el contrainterrogatorio sobre conducta específica pertinente. En este caso dicha prueba servía también el propósito de impugnar el testigo Martínez Sánchez quien se convirtió en testigo de reputación al contestar al fiscal, sin objeción de la Defensa:

> *Exacto*, en mi *opinión* yo *entendía* que él no era culpable de lo que había sucedido. (Énfasis nuestro.) T. E., pág. 21.

Luego, con intervención de la Defensa que hizo suya y se solidarizó con la evidencia de opinión en torno al carácter del acusado, dicho testigo vierte ante el jurado el siguiente testimonio oral:

> P: Que él no era culpable. Oiga, pero usted le dijo aquí al Tribunal que la primera vez, usted está hablando hasta las seis de la tarde de ese día. O sea, que usted está relatando unos incidentes que ocurrieron primero en el Arco Iris, después del Arco Iris, frente a la casa de Barreto unos incidentes que habían ocurrido antes, pero usted de lo que pasó en el Bar de Don Fernando, usted no sabe nada.
>
> R: No, señor.
>
> P: ¿Y cómo usted puede concluir de que él no es culpable si usted no sabe, si es que usted después lo que hizo Barreto usted no lo sabe?
>
> R: No.
>
> P: Y ya usted concluyó de que Barreto no era culpable. ¿Cómo es eso? Explíquele al Tribunal y a las Damas y Caballeros del Jurado, cómo es que usted llega a esa conclusión.
>
> LICDA. LÓPEZ: Hay objeción a la pregunta en la forma de hacerla, puede ser "misleading."

HON. JUEZ:

Se permite la pregunta, compañera.

LICDA. LÓPEZ:

Es que el compañero está pidiendo una opinión.

HON. FISCAL:

Pero es que le ha dado la opinión.

HON. JUEZ:

Ese es el tipo de opinión que puede dar un testigo.

LICDA. LÓPEZ:

No, pero es que me refiero [a] una conclusión, es distinto a una opinión.

HON. JUEZ:

Vamos a ver.

HON. FISCAL:

Opinión o conclusión, usted dice que Barreto no era culpable de estos hechos que se le imputan. Yo le pregunto, ¿como usted puede llegar a esta opinión o conclusión de que Barreto no es culpable de estos hechos, si usted no sabe lo que pasó después que Barreto se fue a las seis de la tarde?

R: Bueno, yo verdaderamente en los dos años que lo conozco a él, yo sé que él es una persona honrada, yo sé que es una persona que le gusta trabajar. También entiendo que él es una persona que nunca se ha metido con nadie. . . .

P: Oiga, ¿usted. . . ?

LIC. FLORES:

*Que lo deje contestar, compañero, perdone.* (Énfasis nuestro.)

HON. JUEZ:

Permita que conteste.

HON. FISCAL:

Que es una persona honrada. Vamos a ver.

R: Una persona honrada.

P: ¿Perdón, me permite tomar nota?

HON. JUEZ:

Que le gusta trabajar, dijo él.

HON. FISCAL:

P: ¿Qué más? Es una persona honrada y le gusta trabajar. ¿Qué más?

R: Bueno, hasta donde yo lo conozco, ¿ve?, pues él siempre que se da sus tragos, siempre se los da socialmente, tranquilo. Nosotros, no era la primera vez que nosotros nos dábamos una cerveza, porque él entraba a casa, él bebía en casa conmigo, nos pasábamos al frente de casa y yo entiendo de que no, él no pudo haber sido el que cometió el asesinato.

P: O sea, que usted considera que es un muchacho bueno, un muchacho honrado.

R: Más o menos.

P: ¿Oiga y usted, le pregunto si usted, por esa amistad íntima que usted tenía con Barreto, si usted no se enteró nunca de que él tenía problemas con la justicia anteriormente a este caso?

R: Cuando yo lo conocía no.

P: Específicamente, le pregunto si usted no sabe que [a] él en Caguas también se le imputó en una ocasión otros casos?

LIC. FLORES:
Vamos a objetar la pregunta, Vuestro Honor. Si ya él contestó que no.

HON. FISCAL:
Bueno, no, es que él ha dicho que es bueno y honrado.

LIC. FLORES:
No, y dijo que no, que no conocía de que se había visto involucrado en ese . . .

HON. JUEZ:
Vamos a ver si ahora se le refresca la memoria, si es que eso es lo que persigue el señor Fiscal. Adelante.

HON. FISCAL:
O sea, usted, nunca llegó a su conocimiento de que Barreto había sido acusado en Caguas de un asalto. ¿Nunca tuvo conocimiento de eso?

R: No, señor.

P: Ni por infracción a la Ley de Armas, ni por una Conspiración, o sea, que usted nunca tuvo conocimiento de eso.

R: No. (T.E., págs. 21–25.)

Como se ve, la Defensa aprovechó al máximo dicho testimonio de opinión y buena conducta al punto en que interviene para que el fiscal no interrumpa la parte pre-

cisa en que el testigo describe al acusado ante el jurado como persona honrada, trabajador, "que nunca se ha metido con nadie". La Defensa pudo haberse opuesto o al menos negar su cooperación a este interrogatorio, por no haber sido la reputación y carácter del acusado objeto del directo, si quería impedir la producción de las convicciones previas. Regla 43(F) de Evidencia. Prefirió unirse a esta línea de interrogatorio porque le beneficiaba y debe aceptar las consecuencias legales de su táctica.

Así convertido el testigo de Defensa en un testigo de reputación, fueron correctamente admitidas en evidencia las convicciones previas para tachar tanto la credibilidad del testigo como la buena reputación por él atribuida al acusado. Era este el recurso apropiado del fiscal para desvirtuar lo que había oído el jurado sobre la buena fama y carácter del apelante. *Cf. Pueblo* v. *Iturrino de Jesús*, 90 D.P.R. 706, 711 (1964).

La intervención efectiva de la Defensa en el contrainterrogatorio del fiscal allanó el camino para que la prueba de carácter llegara al jurado. Tal conducta fue lo que puso en contención la fama y carácter del acusado, con tanta eficacia y consecuencia como si lo hubiera hecho en el interrogatorio directo. Además, la prueba del Pueblo, no contradicha por el acusado, fue de tal modo directa y abrumadora, que no puede atribuirse influencia decisiva en el veredicto a la evidencia de buen carácter introducida por el testigo de Defensa y refutada por el fiscal. En el proceso normal de adjudicación de culpabilidad, lo que inclinó al jurado fue el colapso de la Defensa: un hombre señalado por la prueba como autor directo de la muerte de un comerciante en el curso de un robo no niega, ni mucho menos explica, su presencia en el negocio. En tales circunstancias el veredicto no solo es justo, sino inevitable, y no ha debido despertar un fervor formalista en pugna con la norma de este Tribunal al conocer de recursos apelativos:

En todo recurso de apelación la función de este Tribunal

se cumple revisando el legajo de la sentencia guiado por los señalamientos de error o planteamientos de derecho del apelante hasta quedar satisfecho de que el acusado tuvo un juicio imparcial y objetivo. Hay que recordar que todo acusado tiene derecho a un juicio justo, que no significa necesariamente un juicio perfecto. Este Tribunal intervendrá con el veredicto del jurado o el fallo del juez de derecho únicamente cuando esté enervado por error que hiere derechos fundamentales de la persona y que en su proyección y consecuencia estremezca el sentido básico de justicia. El énfasis insistente en recursos técnicos de procedimiento criminal muy poco adelanta la causa si no plantea la vindicación de un derecho. El procedimiento ha adquirido una exuberancia que a veces nos oculta el tronco, el diseño fundamental de "juicio rápido y público" que en sencilla depuración de la prueba sirva tanto al derecho del ofensor como al de la sociedad agraviada. *Pueblo* v. *Díaz Ríos*, 107 D.P.R. 140, 143 (1978).

El veredicto no vulneró derecho fundamental alguno, y es esencialmente justo, por lo que considero que la sentencia debe ser *confirmada*.