*812 TEXTO COMPLETO DE AL SENTENCIA
El señor Nehemías Pérez Gómez nos solicita que revoquemos las sentencias dictadas por el Tribunal de Primera Instancia, Sala Superior de Guayama, en las que se le condenó a pena de prisión por la comisión de varios delitos por hechos ocurridos el 16 de febrero de 2006 en el Barrio Guardarraya del Municipio de Patillas.
Celebrado el juicio por tribunal de derecho, el señor Pérez Gómez fue hallado culpable por los delitos de tentativa de robo agravado (4 cargos), escalamiento agravado y agresión grave (Artículos 199, 204 y 122, respectivamente, del Código Penal de 2004), cuyas penas debe cumplir concurrentemente. También se le halló culpable por la portación y uso de armas de fuego sin licencia y la posesión o uso ilegal de escopeta de cañón cortado (Artículos 5.04 y 5.07 de la Ley de Armas de 2000, Ley Núm. 404 del 11 de septiembre de 2000, según enmendada). Cumplirá estas penas consecutivamente, luego de extinguir las primeras, para una condena de 46 años de reclusión.
Inconforme, el señor Pérez apeló oportunamente de las sentencias y nos solicita su revocación.
Tras un estudio detenido del expediente del caso, la transcripción de la prueba oral y las ponencias del apelante y de la Procuradora General de Puerto Rico, confirmamos las sentencias impugnadas por el señor Pérez Gómez.
Veamos los fundamentos que justifican nuestra determinación.
I
El señor Pérez imputa seis errores al foro sentenciador, los que discute conjuntamente. Se relacionan con distintos asuntos que discutiremos en el orden presentado, salvo el relativo a la duda razonable, que dejamos para último lugar: (A) la solicitud de información al Ministerio Público al amparo de la Regla 95 de Procedimiento Criminal, (B) la negación de una prueba de coartada, (C) que el juzgador conoció durante el juicio que se le juzgaba por otros hechos en una sala distinta, (D) el rechazo de la admisión de cierta prueba porque era de referencia y no se le permitió el ofrecimiento de prueba, y (E) la existencia de duda razonable. [1]
A
El señor Pérez señala como primero y segundo errores que el Tribunal de Primera Instancia le negó la oportunidad de descubrir ciertos documentos del Ministerio Público mediante una solicitud presentada al amparo de la Regla 95 de Procedimiento Criminal. Se refiere a la supuesta entrega tardía de una declaración jurada prestada por el señor Carlos Palau, [2] uno de los perjudicados.
Surge de los autos que el tribunal a quo no denegó solicitud de descubrimiento de prueba alguna relacionada con la declaración jurada prestada por el señor Palau. Por el contrario, ese documento le fue entregado a la defensa del apelante al finalizar el interrogatorio directo del testigo durante el juicio. Fue en ese momento que se activó el derecho del señor Pérez a obtener la referida declaración jurada. Véase Pueblo v. Ribas, 83 D.P.R. 386, 391-92 (1961).
En el caso de autos se determinó causa probable para acusación en ausencia del apelante. Regla 23 de *813 Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23. En tal situación, el tribunal puede determinar causa probable sin que sea necesaria la presentación de prueba testifical alguna. Como consecuencia de este evento procesal, el acusado no tenía derecho a las declaraciones juradas de los testigos que el fiscal se proponía utilizar en la vista preliminar, porque tales testigos no declararon. Para tener derecho a las declaraciones juradas de esos testigos, el acusado tenía que esperar a que declararan en el juicio. Véase Pueblo v. Ribas, 83 D.P.R. 386, a las págs. 391-392.
El tribunal a quo no cometió los dos primeros errores imputados.
B
El señor Pérez nos plantea como tercer señalamiento de error que el Tribunal de Primera Instancia rechazó la prueba de coartada que él intentó presentar como parte de su defensa. Alega que notificó la defensa de coartada antes de la conclusión del juicio. El señor Pérez argumenta que la presentación de la prueba en ese momento no le ocasionaba perjuicio alguno al Ministerio Público ni atrasaba la continuación del proceso. Además, nos plantea que “[e]l balance de los intereses debió ceder ante el derecho del acusado a presentar prueba a su favor, máxima (sic) una prueba de coartada, que ya por su naturaleza y su propia génesis es fundamental a todo acusado.” [3] No le asiste la razón.
La defensa de coartada consiste en la alegación de que el acusado no se encontraba en el lugar del crimen en la fecha y hora en que ocurrieron los actos delictivos que se le imputan. La Regla 74 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 74, regula la cuestión y establece, en lo pertinente, que cuando un acusado tenga una defensa de coartada, deberá presentar en el Tribunal de Primera Instancia un aviso al efecto, con notificación al fiscal, dentro de los 20 días siguientes al acto de la lectura de la acusación en los casos en que deba celebrarse ese acto. Según la Regla 74, cuando el acusado no cumple con los requisitos de esta disposición, no tendrá derecho a ofrecer tal prueba o defensa. Sin embargo, el tribunal podrá permitir prueba de coartada si el acusado demuestra la existencia de causa justificada para el incumplimiento con los requisitos de la regla.
En el caso de autos, el acto de lectura de las acusaciones se realizó el 19 de abril de 2006. El señor Pérez presentó la notificación de que utilizaría el testimonio de su esposa como prueba de coartada en febrero de 2007. No obstante, no presentó con esa notificación, ni durante el juicio de autos, ni en el recurso ante nuestra consideración, justificación alguna para su incumplimiento con los términos de la Regla 74. Nótese que el testimonio anunciado fue el de su propia esposa, testigo a la que siempre tuvo acceso desde que se presentó la denuncia. Por ello, es forzosa nuestra conclusión de que el señor Pérez perdió su derecho a ofrecer la pruebá de coartada que interesaba. No erró el Tribunal de Primera Instancia al excluir la prueba de coartada presentada tardíamente y sin fundamentos que justificaran el retraso.
C
El señor Pérez también nos plantea como quinto error que el tribunal sentenciador incidió cuando permitió al Ministerio Público presentar evidencia sobre otros delitos por los cuales lo estaban procesando en otra sala, a pesar de la oportuna objeción de la defensa. No obstante, el apelante no discutió el error en su alegato. Es doctrina reiterada que los foros apelativos no considerarán un señalamiento de error no discutido por el apelante en su alegato. Véase Pueblo v. Rivera, 75 D.P.R. 425 (1953); Regla 53.2 de Procedimiento Civil, 34 L.P.R.A. Ap. III, R. 53.2 (b). Por ello, colegimos que el señor Pérez abandonó su alegación. No podemos especular sobre el contenido y los fundamentos de este señalamiento.
D
El apelante señala como sexto error del Tribunal de Primera Instancia que no permitió la presentación de determinada prueba por el fundamento de que era prueba de referencia, “a pesar de que eran declaraciones contra interés o admisiones y no se permitió un ofrecimiento de prueba’’.
*814 Según disponen las Reglas 4 y 5 de Evidencia, 32 L.P.R.A. Ap. IV, R. 4 y 5, respectivamente, no se revocará sentencia alguna del Tribunal de Primera Instancia por motivo de la admisión o exclusión errónea de evidencia, a menos: (1) que la parte interesada efectivamente haya objetado oportuna y correctamente dicha admisión o exclusión, y (2) que el tribunal revisor considere que la referida admisión o exclusión fue un factor decisivo y sustancial en la sentencia apelada. Cuando la parte interesada en la revocación de una sentencia alegue que el foro apelado erró al excluir evidencia admisible, debe realizar su objeción oportuna y correcta mediante una oferta de prueba.
Somos conscientes de que la Regla 6 de Evidencia, 32 L.P.R.A. Ap. IV, R. 6, dispone que “[n]ada de lo dispuesto en las Reglas 4 y 5 impedirá que un tribunal apelativo considere errores crasos y perjudiciales de admisión o exclusión de evidencia, a pesar de no haber mediado oportuna objeción, cuando el no corregir dichos errores resulte en un fracaso de la justicia.” Véase a Pueblo v. Carrión Rivera, 111 D.P.R. 825, 829 (1981), y Pueblo v. Ruiz Bosch, 127 D.P.R. 762 (1991), sobre el alcance de esta regla.
Según los comentarios que acompañan las Reglas 4, 5 y 6, su texto recoge “la doctrina del error perjudicial, en virtud de la cual sólo los errores sustancialmente perjudiciales a la parte afectada llevan consigo la revocación, siempre que hubiera mediado oportuna objeción en el Tribunal de Instancia. [...] El criterio para medir la magnitud del efecto del error cometido es la probabilidad de influencia sustancial en el resultado. ” Así lo ha reiterado la jurisprudencia del Tribunal Supremo de Puerto Rico. Véanse Pueblo v. Sánchez Molina, 134 D.P.R. 577, 595-596 (1993); Pueblo v. Ruiz Bosch, 127 D.P.R., a las págs. 784-786; Pueblo v. Rosaly Soto, 128 D.P.R. 729, 744-745 (1991); Pueblo v. Martínez Soils, 128 D.P.R. 135, 162-163 (1991); Pueblo v. Fournier, 77 D.P.R. 222, 278 (1954), y Pueblo v. Oquendo, 83 D.P.R. 234, 241-242 (1961), entre otros.
No hay duda de que el propósito de la oferta de prueba ante el foro de primera instancia es constituir un récord completo de la prueba que se presentó en el juicio para luego, en la etapa apelativa, poder plantear como error la exclusión de esa prueba. Ante el foro apelativo, la oferta de prueba es imprescindible para determinar si la evidencia excluida puede justificar un resultado distinto del caso de haber sido admitida y creída por el tribunal apelado. Véase, Pueblo v. López Rivera, 102 D.P.R. 359, 368 (1974). Sobre este particular, erró el foro apelado al negarse a aceptar el ofrecimiento de prueba. No obstante, veamos si tenemos ante nosotros la situación en que, habiéndose excluido la prueba ofrecida, la omisión del error hubiera producido un resultado distinto al del fallo apelado.
Del alegato del apelante se desprende que la prueba excluida a la que se refiere es una parte del contrainterrogatorio que quiso hacer al agente investigador. [4] Él quería que el agente relatara las declaraciones que le hizo uno de los testigos de descargo, el señor Ramón Luis de Jesús Cruz. Éste le comentó que la noche de los hechos se tropezó con un hombre que tenía la cara ensangrentada. Ese hombre era el señor Carlos Palau. Posteriormente, tuvo una conversación con alguien a quién identificó con el nombre David “Peineta”, una de las personas que la esposa del apelante alegó que era uno de los verdaderos escaladores. Desconocemos el contenido preciso de tales declaraciones porque el propio apelante no lo explica en su alegato. Suponemos que se trata de que David “Peineta” pudo involucrarse en el delito al hablar con el testigo De Jesús Cruz o con la esposa del apelante.
Surge de los autos que el Ministerio Público objetó la prueba que la defensa pretendió introducir, relacionada con esa conversación, especialmente sobre lo 'dicho por David “Peineta” al testigo de defensa De Jesús Cruz, bajo el fundamento de que la misma era prueba de referencia. Luego de la argumentación de rigor, el tribunal declaró con lugar las objeciones del Ministerio Público y no ha lugar al ofrecimiento de esa prueba.
Ante nos, la defensa del señor Pérez insistió en que esas declaraciones, que a su vez las escuchó y así lo declaró el señor de Jesús Cruz al agente investigador, no eran prueba de referencia y, de serlo, eran prueba de *815 referencia múltiple admisible o eran declaraciones contra interés o admisiones de parte. No tiene la razón.
La Regla 64 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 64, gobierna la manera de tratar las declaraciones contra interés en un juicio, particularmente de naturaleza criminal. Dispone la Regla que son admisibles como excepción a la regla de prueba de referencia las declaraciones contra interés: (1) si al momento de hacerse sometían a quien hizo la declaración al riesgo de responsabilidad civil o criminal, y (2) si el declarante no está disponible para testificar por estar ausente de la vista y el proponente de su declaración ha desplegado diligencia para conseguir su comparecencia mediante citación del tribunal.
A pesar de que el tribunal apelado, como bien lo señala el apelante, no le permitió a la Defensa hacer la correspondiente oferta de prueba, hemos identificado en la transcripción de la prueba oral suficiente información para evaluar los méritos de su señalamiento. Del examen de lo argumentado podría concluirse razonablemente que las declaraciones alegadamente hechas por David “Peineta” pudieron ser contrarias a su interés. (Véase T.P.O. págs. 174-180.) De ser cierto lo declarado por éste, él pudo exponerse a ser investigado y, más aún, acusado por los mismos delitos imputados al señor Pérez. Sin embargo, las víctimas siempre alegaron ante las autoridades que en el escalamiento a su hogar estuvo involucrada más de una persona. [5] La posible participación de este individuo en los delitos acaecidos el 16 de febrero de 2006 no es prueba suficiente para que esta Curia revoque las sentencias apeladas dictadas contra el apelante, a quien las víctimas identificaron confiadamente y el Ministerio Público conectó directamente con los hechos en el juicio. Además, no surge de los autos que la Defensa desplegara diligencia alguna para lograr la comparecencia de David “Peineta” como testigo a su favor. Pretende probar la veracidad de la participación de David en el robo por medio de la declaración que una tercera persona le hizo al agente investigador, declaración que éste aquilató y descartó en el curso de sus funciones oficiales.
El segundo fundamento ofrecido por la Defensa para objetar la exclusión de las declaraciones hechas por David “Peineta” es que eran admisiones de parte. La Regla 62 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 62, establece que será admisible como excepción a la regla de prueba de referencia una declaración ofrecida contra una parte si la declaración, entre otras, es hecha por dicha parte en su capacidad individual o representativa. El fundamento, según la Regla 62 de Evidencia, no constituye una objeción correcta, ya que el declarante no es parte del pleito criminal contra el señor Pérez. Para que David “Peineta” sea parte, éste tendría que figurar como coacusado en el presente caso. Al no ser un coacusado, no podemos considerar sus aseveraciones como admisiones de parte.
Luego de analizar detenidamente la transcripción de los procedimientos en el presente caso, estamos convencidos, fuera de duda razonable, de que la sentencia apelada debe sostenerse. A base de la totalidad de la prueba presentada, la sentencia “no es ajena a, ni ‘estremece’, nuestro sentido básico de justicia”. Pueblo v. Díaz Ríos, 107 D.P.R. 104, 143 (1978); Pueblo v. Ruiz Bosch, 127 D.P.R., a la pág. 788.
Forzosamente debemos concluir que cualquier error cometido por el tribunal sentenciador en la exclusión de evidencia y en la negativa a aceptar el ofrecimiento de prueba, no fue substancial ni acarrea la revocación del fallo apelado. Esta conclusión encuentra sólido apoyo en la discusión del próximo error.
E
Nos compete ahora analizar si la evidencia presentada por el Ministerio Público es suficiente y satisfactoria para sostener los fallos de culpabilidad pronunciados contra el señor Pérez, cosa que cuestiona en su cuarto señalamiento de error.
La Constitución del Estado Libre Asociado de Puerto Rico, Artículo II, sección 11, consagra la presunción de inocencia como uno de los derechos fundamentales de todo acusado. El Tribunal Supremo de Puerto Rico ha establecido que esta máxima constituye uno de los imperativos del debido proceso de ley. Véase, Pueblo v. *816 León Martínez, 132 D.P.R 746, 764 (1993); Pueblo v. Irizarry, 156 D.P.R. 780, 786 (2002).
En atención a estos principios, la Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110, ordena que en todo proceso criminal se presuma inocente al acusado mientras no se pruebe lo contrario, y en caso de duda razonable acerca de su culpabilidad se le absolverá. El acusado no tiene obligación alguna de aportar prueba para defenderse y puede descansar plenamente en la presunción de inocencia que le asiste. Véase, Pueblo v. Rosaly Soto, 128 D.P.R., a la pág. 739; Pueblo v. Irrizarry, 156 D.P.R., a la pág. 787.
El mandato constitucional determina, a su vez, el quántum de la prueba exigida en casos criminales, ya que la presunción de inocencia sólo puede derrotarse con prueba que establezca la culpabilidad del acusado más allá de duda razonable. Todos los elementos del delito, así como la conexión del acusado con los hechos que se le imputan, tienen que demostrarse con ese quántum de prueba. Véase, Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 761 (1985).
El Estado tiene la carga de presentar prueba suficiente y satisfactoria para establecer la culpabilidad del acusado fuera de toda duda razonable. La prueba es suficiente cuando demuestra todos los elementos del delito y su conexión con el acusado. Y es satisfactoria cuando produce certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R. 545, 552 (1974). Esto no quiere decir que la culpabilidad del acusado tiene que establecerse con certeza matemática. La duda razonable tampoco se refiere a especulaciones del juzgador, sino que es una duda fundada, es decir, producto del raciocinio de todos los elementos de juicio presentes en el caso. Véase, Pueblo v. Cruz Granados 116 D.P.R. 3, 21-22 (1984); Pueblo v. Bigio Pastrana, 116 D.P.R., a la pág. 761; Pueblo v. Irrizarry, 156 D.P. R., ala pág. 788.
Para justificar la absolución de un acusado, la duda razonable debe surgir de manera serena, justa e imparcial, luego de que el juzgador considere la totalidad de la evidencia del caso o la falta de suficiente prueba que apoye la acusación. En síntesis, la duda razonable es la insatisfacción de la conciencia del juzgador con la prueba presentada por el Ministerio Público para demostrar la participación del acusado con los hechos delictivos en cuestión. Véase, Pueblo v. Cabán Torres, 117 D.P.R. 645, 652 (1986).
El Tribunal Supremo ha decidido reiteradamente que los foros apelativos no podríamos confirmar un fallo condenatorio si estamos convencidos de que “... un análisis integral de la prueba no establece la culpabilidad del acusado más allá de duda razonable. Nosotros, al igual que el foro apelado, tenemos no sólo el derecho, sino el deber de tener la conciencia tranquila y libre de preocupación.” Pueblo v. Irizarry, 156 D.P.R., a la pág. 790.
Veamos si el foro sentenciador erró en la apreciación de la prueba presentada contra el apelante.
El delito de escalamiento agravado comprende dos elementos básicos: (1) que el acusado haya penetrado en una casa, edificio, construcción o estructura ocupada, (2) la penetración tiene que estar motivada por la intención de cometer cualquier delito de apropiación o cualquier delito grave. Artículos 203 y 204 del Código Penal del 2004, 33 L.P.R.A. §§ 4831 y 4832, respectivamente. El escalamiento agravado es un delito grave de tercer grado.
Por su parte, el delito de robo agravado queda configurado cuando: (1) el acusado se apropia ilegalmente de bienes muebles ajenos, (2) sustrayéndolos de la víctima en su presencia inmediata y en contra de su voluntad, (3) mediante el uso de violencia o intimidación. Además, el acusado debe haberle (4) infligido daño físico a la víctima o el acto debe ocurrir en un edificio residencial ocupado donde se halle la víctima. El delito de robo agravado es un delito grave de segundo grado severo. Artículos 198 y 199 del Código Penal del 2004, 33 L.P.R. A. §§ 4826 y 4827, respectivamente.
*817 Con relación al delito de agresión grave, éste queda configurado cuando el acusado, por cualquier medio o forma: (1) le cause a la víctima una lesión a su integridad corporal, (2) que requiera atención médica, ayuda profesional especializada o tratamiento ambulatorio, aunque no produzca un daño permanente. Artículos 121 y 122 del Código Penal del 2004, 33 L.P.R.A. §§ 4749 y 4750, respectivamente. Es éste un delito grave de cuarto grado.
Hemos examinado y analizado con detenimiento la transcripción de la prueba oral y los autos originales del caso. La prueba presentada por el Ministerio Público, por medio de los testimonios de las víctimas del crimen y del agente investigador, efectivamente demostró todos los elementos de los delitos imputados al señor Pérez y su conexión con los hechos constitutivos de tales delitos.
Los testimonios creídos por el juzgador de los hechos establecieron que el 16 de febrero de 2006, el señor Pérez cometió el delito de escalamiento agravado cuando penetró la morada de la familia Palau, mientras los miembros de ésta se encontraban ocupando la propiedad, con la intención de cometer un robo, para lo cual utilizó una escopetada recortada, sin licencia para su posesión y portación.
El robo era agravado porque en el curso del delito, el señor Pérez le infligió varios golpes en la cabeza al señor Palau con el arma de fuego que portaba, hecho perpetrado en el edificio residencial ocupado por las víctimas. No obstante, quedó configurado solamente el delito de tentativa de robo agravado porque el señor Pérez huyó del lugar del crimen cuando el señor Palau alcanzó desenmascarar al apelante, quien era su agresor. Ese acto constituyó, efectivamente, una circunstancia ajena a la voluntad del apelante. [6] De igual manera, quedó configurado el delito de agresión grave porque, según los autos examinados, las heridas sufridas por la víctima a manos del señor Pérez requirieron atención médica y hospitalaria por un período aproximado de una semana.
El señor Pérez fue sentenciado, además, por infracciones a la Ley de Armas de 2000. El Artículo 5.04 de la Ley de Armas, 25 L.P.R.A. § 458c, dispone que toda persona que transporte o lleve consigo cualquier arma de fuego, sin tener una licencia de armas o el permiso correspondiente para portarlas, incurrirá en delito grave. Este delito, portación ilegal de armas, comprende, pues, dos únicos elementos: (1) la transportación o la posesión de cualquier arma de fuego, y (2) sin tener los permisos expedidos por el Estado para realizar tales actos.
Asimismo, el Artículo 5.07 de la Ley de Armas, 25 L.P.R.A. § 458f, dispone que incurrirá en delito grave toda aquella persona que: (1) posea o use una escopeta de cañón cortado que pueda causar grave daño corporal; (2) sin tener una licencia expedida por el Estado para poseer el arma. Es menester señalar que los delitos tipificados en los Artículos 5.04 y 5.07 de la Ley de Armas no requieren el elemento subjetivo de la intención. Esto quiere decir que el Pueblo sólo tiene que probar que el acusado portaba o poseía un arma como las descritas anteriormente y que no contaba con los correspondientes permisos para así hacerlo.
En el caso de autos, el Ministerio Público probó las infracciones a los artículos 5.04 y 5.07 de la Ley de Armas. Los testigos lo identificaron como la persona que entró a su hogar con una escopeta recortada y no existe prueba alguna en los autos que demuestre que el señor Pérez tenía las licencias correspondientes expedidas por la Policía de Puerto Rico para la posesión y portación de una escopeta recortada. Esa situación creó la presunción de que el apelante tenía la intención de utilizar esa arma de fuego para cometer algún delito. Artículo 5.11 de la Ley de Armas, 25 L.P.R.A. § 458j. Tal presunción fue corroborada por los testigos, quienes describieron los actos que evidenciaban la intención de robar y las agresiones físicas provocadas durante el intento.
La evidencia presentada por el Estado demostró la conexión necesaria entre el señor Pérez y los hechos delictivos imputados. Según el testimonio de las víctimas, en medio del asalto se formó una trifulca en donde el señor Palau pudo despojar al señor Pérez de la máscara que utilizó para esconder su rostro. Tanto Palau como *818 sus dos hijos, Natalia y Ricardo, tuvieron la oportunidad de ver la cara del asaltante. El 21 de febrero de 2006, el señor Palau y su hija Natalia identificaron al apelante Nehemías Pérez Gómez como el asaltante que portaba la escopeta. Tal identificación fue realizada mediante procesos independientes del examen de libros de fotografías que producen las autoridades policiacas.
En una segunda ocasión, el 7 de marzo del mismo año, el señor Palau y sus dos hijos, Natalia y Ricardo, identificaron al señor Pérez como el asaltante que fue desenmascarado la noche de los hechos. En procedimientos independientes, éstos escogieron la fotografía del señor Pérez de un grupo de nueve imágenes. Finalmente, las tres víctimas identificaron en corte abierta al señor Pérez como el asaltante que portaba la escopeta.
La Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(D), establece que para probar cualquier hecho es suficiente la evidencia directa de un testigo que le merezca al juzgador entero crédito, salvo que por ley se disponga otra cosa. Las conclusiones formuladas por el juzgador de los hechos sobre la credibilidad y la suficiencia de la prueba para la identificación de un acusado tienen todo el respeto y deferencia que ordinariamente los foros apelativos le extienden a las determinaciones de hechos. Esto es así porque el juzgador de los hechos está en mejor posición que los foros apelativos para adjudicar la credibilidad de los testigos. Por tanto, esas determinaciones no pueden descartarse cuando, como ocurre en el presente caso, están sostenidas por la prueba y no hay indicios de pasión, prejuicio o parcialidad contra el apelante. Véase, Pueblo v. Rodríguez Román, 128 D.P.R. 121, 128 (1991).
Por entender que el Ministerio Fiscal presentó prueba suficiente y satisfactoria para establecer todos los elementos de los delitos imputados al señor Nehemías Pérez Gómez, resolvemos que no erró el Tribunal de Primera Instancia al emitir los fallos de culpabilidad, los que se sostienen fuera de toda duda razonable y fundada.
II
Por los fundamentos expresados, confirmamos las sentencias apeladas.
Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 26

1. La relación de errores es la siguiente:

"1. Erró el Ministerio Fiscal al ocultar evidencia indispensable para impugnar la identificación del acusado, la cual fue solicitada por la defensa en una notificación y/o petición al amparo de la Regla 95 de Procedimiento Criminal, de la que se negó su existencia y luego surgió en el juicio que existía.

2. Erró el Tribunal de Primera Instancia al negar la obtención de evidencia en poder del Ministerio Público la cual fue solicitada por la defensa y descubierta su existencia durante el juicio.

3. Erró el Tribunal de Primera Instancia al no permitir la presentación de prueba de coartada de conformidad con la Regla 74 de Procedimiento Criminal, a pesar de haberse notificado en corte abierta sin oposición y aun al señalar que se desconocía su existencia.

4. Erró el Tribunal de Primera Instancia al determinar la culpabilidad del imputado, cuando ésta no fue probada más allá de duda razonable.

*819
5. Erró el Tribunal de Primera Instancia al presentarse evidencia al juez que el acusado estaba siendo procesado por otros delitos en otra sala, a pesar de la objeción de la defensa.

6. Erró el Tribunal de Primera Instancia al no permitir la presentación de evidencia alegándose que era prueba de referencia, a pesar de que eran declaraciones contra interés o admisiones y no se permitió un ofrecimiento de prueba. ”

2. El apellido de los perjudicados se escribe indistintamente en los diferentes documentos como Palau o Palao. Utilizamos Palau en esta sentencia por ser esta última grafía la utilizada en los documentos oficiales.

3. Página 28 del recurso de apelación presentado por el señor Pérez.

4. La evidencia a la que se refiere el apelante tiene su origen en una grabación que su esposa hizo por cuenta propia, en las que alegadamente otras personas se involucran en el robo. Esa grabación se llevó al CIC y el agente investigador Harry Solivan Díaz la recibió y la hizo parte de su investigación. Según el apelante, su esposa "se tira para la calle y comienza a averiguar y le trae a [Solivan Díaz] la información. [L]e trae una grabación. ” De la transcripción del interrogatorio hecho al agente Solivan Díaz surge lo siguiente:

“P. Mire, y le dice a usted, ‘Mire, yo investigué en la calle y aquí los que... averigüé que los que cometieron este asalto fueron uno que se llama Gegé, uno que le llaman Gugu, David Peineta y Pupi. Cuatro personas. ¿ Correcto ?

R. Eso es así.

[...]

P. Mire, lo cierto es que con la información que Dashira le llevó a usted, usted decide investigar este ángulo del caso, ¿verdad? Re-investigar el caso. ¿Verdad que sí?

R. No re-investigarlo, porque nosotros continuamos todo el tiempo investigando, porque faltaba otra persona que había entrado a la residencia.

P. Faltaba otra persona. Mire, he inclusive (sic) ustedes les transmiten a ellos que sentían que habían (sic) otra persona más en la playa esperando.

[■■■]

P. Y usted va y entrevista a estas cuatro personas, Elvin Abreú Alicea, Gegé.

R. Eso es correcto.

P. Félix Martínez Laboy, Gugu, y David Francisco Rivera, David Peineta y a Juan Carlos Ramos Velázquez, Pupi.

R. Lo[s] entrevisto.

[■■■]”■

El resto del interrogatorio se dirigió a que el agente declarara sobre las manifestaciones que le hicieron durante su investigación las personas señaladas como los escaladores por la esposa del apelante y otras que surgieron en el proceso investigativo. El fiscal se opuso a esa línea de interrogatorio por ser prueba de referencia.

5. Declararon que fueron dos los asaltantes que escalaron su casa de playa. De éstos, solamente el señor Pérez fue identificado por las víctimas.

6. Existe tentativa cuando la persona realiza acciones o incurre en omisiones inequívoca e inmediatamente dirigidas a iniciar la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad. Artículo 35 del Código Penal del 2004, 33 L.P.R.A. § 4663.